CAMDEN COUNTY CIRCUIT COURT.

HERBERT J. KOEHLER, RECEIVER OF J. R. TUCKER, INCORPORATED, PLAINTIFF, v. WILLIAM RICHMAN, DEFENDANT.

Decided April 27, 1928.

For the plaintiff, *Louis B. LeDuc*.

For the defendant, *Waddington & Mathews (Edward C. Waddington)*.

DONGES, J. This suit is brought to recover the balance of commissions alleged to be due to J. R. Tucker, Incorpo-

rated, from the defendant. This case is submitted to me for determination without a jury, upon stipulated facts.

The following agreement was entered into:

"October 20th, 1925.

J. R. Tucker, Inc.,
313 Market St.,
Camden, N. J.

Dear Sir:

In consideration of your effecting sale of premises known as 428, 430, 432, 434 Broadway, Camden, N. J., for one hundred and forty-two thousand [$142,000] dollars, to do which you were authorized, we hereby agree to pay you five per cent. commission on one hundred thousand [$100,000] dollars, commission amounting to five thousand [$5,000] dollars and three per cent. commission on forty-two thousand [$42,000] dollars, commission amounting to twelve hundred and sixty [$1,260] dollars, total commission amounting to sixty-two hundred and sixty [$6,260] dollars.

One thousand [$1,000] dollars of the above-mentioned commission is handed you herewith; and we agree to pay you one thousand [$1,000] dollars on November 24th, 1925, and one thousand dollars [$1,000] on December 24th, 1925; balance of commission amounting to thirty-two hundred and sixty [$3,260] dollars to be paid at time of final settlement, March 20th, 1926.

Yours very truly,
[Signed] WM. RICHMAN."

By the terms of the agreement of sale which was dated October 20th, 1925, $5,000 was paid on the execution of the agreement, $5,000 was payable November 24th, 1925, and another $5,000 was payable December 24th, 1925. Settlement was to take place March 1st, 1926, when a first mortgage of $100,000 and a second mortgage of $10,000 were to be executed and delivered, the balance of the purchase price of $17,000 was to be paid in cash. The agreement of sale

was between William Richman and Flora S., his wife, of the first part, and "J. R. Tucker, Inc., agent for Samuel Spring, of the city and county of Camden and State of New Jersey," of the second part.

The defendant paid to Tucker $1,000 on account of commissions on October 20th, 1925, and on November 24th, when the second installment of $5,000 was paid by check of J. R. Tucker, Incorporated, the sum of $1,000, being the second installment on commissions, was paid. The installment of $5,000 coming due on the 24th of December, 1925, was not paid. An extension was requested by J. R. Tucker, Incorporated, and granted to a date in January, on which date Richman threatened to forfeit the deposit money, whereupon Tucker recorded the contract and requested a further extension to the first day of March, 1926, and a still further extension to April 15th, 1926, both of which were granted. On or about April 15th, 1926, Tucker, Incorporated, advised defendant that the contract would not be performed on the part of the buyer, and the settlement never took place, due to the default of the purchaser. On June 8th, 1926, plaintiff, Koehler, was appointed, by order of the United States District Court for the District of New Jersey, receiver of J. R. Tucker, Incorporated, and has qualified and is now acting as such receiver.

The authority of J. R. Tucker, Incorporated, to act for Spring appears by the following correspondence between said J. R. Tucker, Incorporated, and Spring:

"October 12th, 1925.

Received of Samuel Spring the sum of ten thousand [$10,000] dollars to be used in the purchase of real estate at the discretion of the undersigned, fifteen thousand [$15,000] dollars in addition to be placed in the hands of the undersigned on or before three weeks from this date.

[Signed] J. R. TUCKER, INC.

Accepted:                                J. R. TUCKER, Pres.

[Signed] SAMUEL SPRING."

"October 13, 1925.

J. R. Tucker, Inc., and
Mr. J. R. Tucker, President,
Federal Street,
Camden, N. J.

Dear Mr. Tucker:

In reference to our conversation yesterday and the $10,000 which I left on deposit with you at that time, I understand that the arrangement we entered into included the following understanding:

(1) That title to all property acquired by you with my money would be taken in the name of J. R. Tucker, personally as trustee, or in my own name as I should elect.

(2) That you in no way have any authority to commit me to any obligation in excess of $25,000 agreed upon.

(3) That the money which I deposit with you shall, as usual, be deposited in a special trustee or agency account by you.

(4) That you will keep me advised of each and every deal that you make and let me have for my records copies of all papers or contracts entered into.

The above is the usual precaution which I think a company of your size would take to protect its customers. I am happy to follow your discretion in the purchase or sale of such properties in Camden or immediately adjacent thereto which you may deem advisable. I am hopeful that you will give me some action plus some pleasant surprises.

I have checked over my financial commitments here and I see no reason whatsoever why I shall not be able to send you the additional $15,000 before the end of this month.

Kindly let me known when you are next coming to New York so we can go to lunch together. If I can be of any service to you in your plans hereabouts, I shall be happy to co-operate with you because it is always my theory of doing business that things must be mutual and one must give as well as take.

After the way Mr. David Stern spoke to me about you I haven't any hesitation to trust you as I have. The amount

of money involved means a good deal of money to me because I am not a wealthy man, but having confidence in Camden by reason of my observation there and of you by reason of what Mr. Stern said, I look forward to my arrangement in Camden with confidence.

Yours very truly,<br>
[Signed] SAMUEL SPRING<br>
S. SPRING,<br>
Secretary-Treasurer.

SS-m

"October 16th, 1925.

Mr. Samuel Spring, Secretary-Treasurer,
First National Pictures, Inc.,
383 Madison Ave.,
New York City.

Dear Mr. Spring:

I am in receipt of your letter of October 13th, outlining the basis on which I am to handle the money you are placing with me to invest. The terms as outlined in your letter are according to our verbal agreement, so that your letter will serve as a contract between us.

I have already made a purchase in your account and will give you your copy of the agreement when I see you in New York the coming week.

Very truly yours,<br>
[Signed] J. R. TUCKER, INC."

JRT:KT

"November 5, 1925.

Mr. J. R. Tucker,
313 Market St.,
Camden, N. J.

Dear Mr. Tucker:

In reference to the property which you bought for me, I want to thank you for your assurances to me that I need not worry about the additional payments on settlement dates; that if for any reason the property is not sold by that time

you will finance me so that we can take up these payments and I will not lose by down payments.

I shall not be in a position to arrange these finances. And, therefore, your assurances have relieved my mind.

I am right now in the midst of some very busy things for First National since we have let our sales manager go and I am supervising sales which is a pretty big job. Therefore, I am going to forget about this property and leave it all up to you since I have no worries about payments on settlement dates.

Thanking you for your assistance and the kind way you have carried out my wishes that you should not obligate me for more than $25,000, I remain,

Faithfully yours,

[Signed] S. Spring

SS-m
S. Spring."

"January 15, 1926.

Mr. J. R. Tucker,
c/o Tucker and Co.,
Market Street,
Camden, New Jersey.

Dear Mr. Tucker:

I have been checking over the documents which were signed in connection with the property in Camden and I notice that in regard to the piece on Broadway, you have signed 'J. R. Tucker & Co., Inc., agent for Samuel Spring.'

I wish to make it clear that according to our agreement you had no authority to obligate me to any further payments, and that the only obligation on this contract of purchase is that of J. R. Tucker, and that I am not bound thereby.

It is true that I have consented to your putting my money on a basis where it may be necessary for further payments to be made to protect it, but this was upon your assurances that you would take care of it. At no time did I bind myself to make further payments. I suggest that you make this clear to the seller of the property.

I have written to you on this matter since I thought it to be of interest to both of us that there be no misunderstanding.

With kind regards, I am,

Yours very truly,

[Signed] S. SPRING."

It is stipulated that the defendant at no time had knowledge of the letters or of the relations existing between J. R. Tucker, Incorporated, and Spring, except as was disclosed to him by the agreement of sale.

The question to be determined is whether, upon this statement of facts, the plaintiff is entitled to recover the balance of commissions in accordance with the agreement between the Tucker corporation and the defendant. It is admitted that the defendant, Richman, knew nothing of the extent of the authority of the broker. Tucker did not disclose that its agency was a limited one, although it must have been known by Tucker that the payments called for upon the Richman contract alone exceeded the amount which Spring was prepared to pay for all purchases on his account. The further conclusion is irresistible that Tucker had made other contracts for Spring's account, because on October 16th, 1925, four days earlier than the contract with Richman was made, Tucker wrote to Spring and said: "I have already made a purchase in your account and will give you your copy of the agreement when I see you in New York the coming week." Further, in his letter of January 15th, 1926, Spring uses this language: "I have been checking over the documents which were sent in connection with the property in Camden, and I notice that in regard to the piece on Broadway, you have signed 'J. R. Tucker & Co., Inc., agent for Samuel Spring.' I.wish to make it clear that according to our agreement, you had no authority to obligate me to any further payments, and that the only obligation on this contract of purchase is that of J. R. Tucker, and that I am not bound thereby," &c. This repudiation was not denied by Tucker, and it must therefore be assumed that Tucker, in making the contract with Richman, knowingly acted beyond the scope of its authority.

A reading of the correspondence leads to the conclusion that Tucker, Incorporated, obligated itself on other contracts for Spring's account, but knowing that if these contracts were not sold before the time when further payments and final settlements were required, that neither Spring nor Tucker, out of Spring's funds, would be able to make such settlements.

It further appears that Tucker knew, because Spring advised him in his letter of October 13th, 1925, and in his letter of November 5th, 1925, that he was not able to make the payments required by the various contracts which Tucker had entered into him, and that Tucker would be required to finance them. Despite this knowledge, Tucker advanced the installment of November 24th, and thereafter procured an extension of the time of payment of the next installment due upon the contract. At no time did Tucker advise the defendant of the true situation. Richman was not informed that Spring did not intend to perform the contract with him. When the installment of December 24th was due, Tucker requested an extension, thus indicating intention of the purchaser to perform, although it then knew that the purchaser would not be able to perform, if he still held the contract when the settlement date arrived.

As it has been said in *Carpenter* v. *Overland Tire Co.*, 102 *N. J. L.* 196: "The essential requisite of an agent in the law is loyalty to his principal, and it is, of course, fundamental that an agent cannot recover from the principal in a case where he has been a party to the sacrifice of that principal's interests without the latter's knowledge and by fraud or intentional concealment."

The recent case of *Smith* v. *Kreps*, 6 *N. J. Adv. R.* 399, held that a failure of an agent to disclose to his principal, the owner, facts which would alter the belief of the owner when he signed the contract that such contract would be performed by the other party, when in fact the agent had such knowledge, operated as a fraud upon the owner and precluded the agent from recovering commissions."

In the instant case, the conclusion is inevitable that Tucker not only exceeded its authority, but knew when it signed

the contract that it was exceeding its authority and that it was gambling on the sale of this contract, and perhaps other contracts made on Spring's account, and knew further that unless it was able to sell one or more of these contracts, that Spring would not be in position to perform. This was not the character of conduct which the defendant was entitled to receive from the broker. He was entitled to loyalty, and fair dealing, and full information, if the purchaser had imposed any limitation upon the reputed agent in making contracts for him.

I find as a fact, therefore, that J. R. Tucker, Incorporated, concealed the true situation, and that no settlement having taken place, it is not entitled to recover.

It seems so clear that there can be no recovery of commissions in this case, that I have not felt called upon to determine whether or not, under the circumstances, the contract was, in effect, that of Tucker and not Spring.

Judgment will be entered for the defendant.